**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRYSTINA RUSSELL, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 20-cv- |
| v. | ) ) | |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING, LLC; ENCORE CAPITAL GROUP, INC., and KOHN LAW FIRM S.C., | ) ) ) ) ) | Jury Demanded |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Krystina Russell, on behalf of herself and all others similarly situated, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and alleges:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. §1331.

2.      Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

### STANDING

3.      Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4.      Specifically, Plaintiff has suffered a harm from receiving false, misleading, and deceptive communications from Defendants while they were attempting to collect a debt from her.

5.      Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6.      Plaintiff, Krystina Russell ("Plaintiff"), is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted Credit One Bank, N.A. consumer credit card account.

7.      Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

8.      Defendant, Midland Credit Management, Inc. ("MCM"), is a Kansas corporation that does or transacts business in the State of Illinois. Its registered agent is Illinois Corporation Service C, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

9.      MCM is engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts originally owed to others.

10.     MCM maintains and/or owns a website, www.midlandcredit.com.

11.    MCM's website contains, in part, the following statements:

# ABOUT US

We help consumers resolve past-due debt obligations. By providing education and payment plans, we help consumers start down the path of resolving their outstanding obligations.



## 50 states

We've helped consumers across the country get back to doing what they love.



## 7,000,000+

consumers that have gained back their financial independence.



## Since 1953

We have empowered our consumers through education and integrity.

Midland Credit Management, Inc., "About Us", www.midlandcredit.com, Accessed on 27 Jan. 2020.

12.     MCM is licensed as a collection agency in the State of Illinois.

13.     MCM regularly collects or attempts to collect defaulted consumer debts on behalf of others, and is a "debt collector" as that term is defined in § 1692a(6) of the FDCPA.

14.     Defendant Midland Funding, LLC ("Midland") is a Delaware limited liability company that does or transacts business in the State of Illinois. Its registered agent is Midland Credit Management, Inc., located at 1821 Walden Office Sq., Ste. 400, Schaumburg, Illinois 60173.

15.     Midland is engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts originally owed to others, via placement of said defaulted consumer debts with entities such as MCM, for collection from consumers.

16.     Midland holds a collection agency license from the State of Illinois.

17.     Midland's principal business purpose is the collection of defaulted consumer debts, as it derives all of its revenue from purchasing and recovering portfolios of defaulted receivables from consumers.

18.     Midland is thus a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

19.     Encore Capital Group, Inc. ("Encore"), through its subsidiaries (collectively with Encore, the "Company"), is an international specialty finance company providing debt recovery solutions and other related services for consumers across a broad range of financial assets. The Company purchases portfolios of defaulted consumer receivables at deep discounts to face value

and manages them by working with individuals as they repay their obligations and work toward financial recovery. Defaulted receivables are consumers' unpaid financial commitments to credit originators, including banks, credit unions, consumer finance companies and commercial retailers. Defaulted receivables may also include receivables subject to bankruptcy proceedings. The Company also provides debt servicing and other portfolio management services to credit originators for non-performing loans. Encore Capital Group, Inc., QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 For the quarterly period ended June 30, 2019, https://encorecapital.gcs-web.com/static-files/76272cc9-10de-4101-88dc-35ab0825ac9e, Accessed on January 27, 2020.

20.     Encore maintains and/or owns a website, www.encorecapital.com.

21.     Through Midland Credit Management, Inc. and its domestic affiliates (collectively, "MCM"), the Company is a market leader in portfolio purchasing and recovery in the United States. Through Cabot Credit Management Limited ("CCM") and its subsidiaries and European affiliates (collectively, "Cabot") the Company is one of the largest credit management services providers in Europe and a market leader in the United Kingdom and Ireland. These are the Company's primary operations. Encore Capital Group, Inc., QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 For the quarterly period ended June 30, 2019, https://encorecapital.gcs-web.com/static-files/76272cc9-10de-4101-88dc-35ab0825ac9e, Accessed on January 27, 2020.

22.     Encore's principal business purpose is the collection of defaulted consumer debt as it derives a majority of its revenue from the collection of defaulted consumer receivables and it is thus a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

23.     Defendant, Kohn Law Firm S.C. ("Kohn"), is a Wisconsin law firm with its principal address at 735 North Water Street, Suite 1300, Milwaukee, Wisconsin, 53202-4106.

24.     Kohn maintains and/or owns a website, www.kohnlaw.com.

25.     Kohn's website reads in part as follows:

About Us

Founded in 1960 by Robert W. Kohn, the Kohn Law Firm S.C. is an award-winning and nationally recognized debt collection law firm that concentrates its practice primarily on credit card, municipal, medical and various other types of consumer debt, as well as repossession actions and insurance subrogation claims.  The firm covers the entire state of Wisconsin for its clients, which consist primarily of large national credit issuers and debt buyers, but also include local municipalities and other retail businesses and service providers.

Kohn Law Firm, S.C. website, https://www.kohnlaw.com/AboutUs.aspx, Accessed on 27 Jan. 2020.

26.     Kohn regularly collects or attempts to collect defaulted consumer debts on behalf of others, namely, MCM and Midland, and is a "debt collector" as that term is defined in § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

27.     According to Defendants, Plaintiff incurred an alleged debt for the purchase of consumer goods and services, originally via the use of a Credit One Bank, N.A. consumer credit card account ("alleged debt").

28.     The alleged debt arose from funds used for personal and household purposes and is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

29.     Due to her financial circumstances, Plaintiff could not pay the alleged debt, and the alleged debt went into default.

30.    Midland claims to have purchased the alleged debt after default, and MCM subsequently began collecting the alleged debt.

31.    MCM claims that the alleged debt was assigned by Credit One Bank, N.A. to MHC Receivables LLC and FNBM LLC. (Exhibit A, State Court Complaint).

32.    MCM claims that the alleged debt was then assigned from MHC Receivables LLC and FNBM LLC, to Sherman Originator III LLC.

33.    MCM claims that it purchased the alleged debt from Sherman Originator LLC.

34.    Kohn subsequently began collecting the debt on Midland's and MCM's behalf.

35.    Kohn, on behalf of Midland, filed a lawsuit against Plaintiff on September 23, 2019, in the State of Illinois ("State Court Complaint"), styled *Midland, LLC v. Krystina Russell*, Case No. 19-M1-128216. (Exhibit A, State Court Complaint); Cook County Case Information Summary available at: https://courtlink.lexisnexis.com/cookcounty/FindDock.aspx?NCase=2019-M1-128216&SearchType=0&Database=1&case_no=&PLtype=1&sname=&CDate= (last visited January 27, 2020).

36.    Midland, via an agent hired by Kohn, served the State Court Complaint, along with a summons ("Summons") on Plaintiff on or about December 24, 2019.

37.    The State Court Complaint and Summons conveyed information regarding the alleged debt to Plaintiff, including the identity of the creditor and a balance on the alleged debt.

38.    The State Court Complaint and Summons were each thus a "communication" as that term is defined at 15 U.S.C. § 1692(a) of the FDCPA.

39.    In the State Court Complaint, Midland makes the following prayer for relief:

> [P]laintiff demands a judgment against the defendant in the
> sum of $1,172.99 **as well as the costs of this action**. . . .

7

(Ex. A, State Court Complaint) (emphasis added)

40.     The Summons does not indicate that costs are sought.

41.     A "Credit Card or Debt Buyer Collection Action Affidavit" ("Affidavit") is attached to the State Complaint.

42.     The Affidavit attached to the State Court Complaint references the alleged debt as "…the Consumer Debt or Account."

43.     The Affidavit is executed by Melanie Rosenberger.

44.     According to the Affidavit, Ms. Rosenberger is an authorized employee of Midland.

45.     At all times relevant to this Complaint, Midland and Kohn authorized, directed, approved of and ratified Ms. Rosenberger's actions taken toward Plaintiff, during the course of its attempts to collect the alleged debt therefrom.

46.     The Affidavit is a form affidavit provided pursuant to Illinois Supreme Court Rule 280.2, though it was drafted by one or more of the Defendants.

47.     Paragraph 3 of the Affidavit requires that the debt collector in a state court action indicate whether or not it is collecting additional amounts after the charge-off date.

48.     Midland's Affidavit indicated that it was <u>not</u> seeking additional amounts after the charge-off date, as follows:

> 3.ADDITIONAL ACCOUNT INFORMATION AFTER CHARGE-OFF
> Plaintiff is seeking additional amounts after the charge-off date:
> [X] No

(Ex. A, State Court Complaint)

49.     Court costs would be considered "additional amounts" by any reasonable reading.

50.     Any court costs and/or additional amounts, that would be incurred, would

8

necessarily be incurred after charge-off.

51.     A representative for Midland thus swore under oath, in the Affidavit attached to the State Court Complaint, that Midland was not seeking additional amounts after charge-off.

52.     By swearing under oath, in the Affidavit, that it was not seeking additional amounts after charge-off, Midland expressly waived any statutory or contractual right to court costs.

53.     Despite this fact, the State Court Complaint seeks that the costs of the State Court Complaint be paid by Plaintiff—contrary to the communication contained in the Affidavit.

54.     In fact, the State Court Complaint specifically prays for judgment against the State Court Defendant(s), here the Plaintiff, for court costs.  (Ex. A, State Court Complaint).

55.     In contrast, the Affidavit indicates that no court costs would be sought, since it states that Midland was not seeking additional amounts after the charge-off date.

56.     Defendants cannot both be seeking, and not seeking, additional amounts, here costs of suit, after charge-off of an alleged debt.

57.     When there are two different accounts of what a debtor actually owes the creditor, that one version is the correct description does not save the other, incorrect description. *Veach v. Sheeks*, 316 F.3d 690, 93 (7th Cir. 2003), citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999).

58.     15 U.S.C. § 1692e of the FDCPA provides as follows:

>   **False or misleading representations**
>
>   **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
>   **. . . (2) The false representation off—**

**(A) The character, amount, or legal status of any debt**
**(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**. . . (5) The threat to take any action that cannot legally be taken. . .**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

59.    Defendants misrepresented the amount and legal status of an alleged debt, in violation of 15 U.S.C. § 1692e and § 1692e(2) when they sued Plaintiff for court costs which Midland had expressly waived.

60.    Defendants misrepresented the amount and legal status of an alleged debt, in violation of 15 U.S.C. § 1692e and § 1692e(2) when they communicated both that court costs were, and that they were not, owed and/or being sought.

61.    Defendants misrepresented the compensation to which they were entitled, in violation of 15 U.S.C. § 1692e and § 1692e(2), when they communicated that they were not seeking court costs.

62.    Defendants used false, misleading, and deceptive means to attempt to collect a debt, in violation of 15 U.S.C. § 1692e and § 1692e(10), when they sought court costs in a state court complaint while swearing under oath that no additional amounts after charge-off were being sought.

63.    Defendants improperly threatened to pursue court costs from Plaintiff, in violation of 15 U.S.C. § 1692e(5), when they sought additional amounts after the charge-off date of a debt that it had indicated under oath they would not seek.

64.    Plaintiff was confused by the conflicting statements, and she did not know whether Defendants had waived court costs, or whether they were in fact seeking to collect the

same from her.

65.     Plaintiff would likely have paid or settled the alleged debt had Defendants not presented conflicting information regarding the alleged debt amounts that were being sought.

66.     Plaintiff hired an attorney to advise her on the meaning of the content of the State Court Complaint, including the conflicting statements found therein.

67.     Plaintiff believed, and the unsophisticated consumer would reasonably believe, that court costs were not being sought, after having reviewed the Affidavit.

68.     Plaintiff did not know how much she was being asked to pay as the result of Defendants' conflicting communications to her.

69.     Plaintiff did not understand, and the unsophisticated consumer would not understand, whether Midland was seeking additional amounts after charge-off, as indicated in its State Court Complaint, or not seeking additional amounts after charge-off, as indicated in its Affidavit and Summons.

70.     An unsophisticated consumer could pay the alleged debt amount listed on a summons and collection complaint, in reliance on the representation that no additional amounts were being sought and that said payment would satisfy the entire obligation, only to later find that further costs were being sought.

71.     An unsophisticated consumer could decide to allow a case to go to default, believing that doing so would entitle Defendants to no more money than was being originally sought, only to find out later that the amount of the debt has increased due to court costs.

72.     Defendants' representation that additional amounts incurred after charge-off were not being sought is a misrepresentation.

73.     Defendants could have easily avoided violating the FDCPA by selecting "Yes" when indicating whether or not Midland would be seeking additional amounts after charge-off, instead of falsely *expressly* representing, as they did, that Midland was not collecting additional amounts after charge-off.

74.     15 U.S.C. § 1692f of the FDCPA provides as follows:

**Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

75.     Defendants engaged in an unfair practice, in violation of 15 U.S.C. § 1692f when they caused Plaintiff to be served with a state court complaint and summons that variously indicated both that Midland was, and was not, seeking additional amounts after the charge-off date of an alleged debt.

76.     Defendants engaged in an unfair practice, in violation of 15 U.S.C. § 1692f, when they attempted to collect court costs which Midland had expressly waived.

77.     Violations of the FDCPA which would influence a consumer's decision to pay a debt in response to a dunning letter, are material. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (citing *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 628 (7th Cir. 2009)).

78.     Here, Defendants' conflicting information given to a consumer regarding their intention to seek additional amounts after the charge-off date of an alleged debt would prevent a consumer from knowing how much is owed on an alleged debt or what additional exposure she faces were she to proceed to defend a lawsuit.

79.     Plaintiff was confused as to the amount of money sought by Defendants due to their inconsistent communications to her, regarding the amount of the alleged debt.

80.     The FDCPA requires precise calculation of the exact amount of an alleged debt, "and for good reason: the debt collector legally may collect (or attempt to collect) only the amount actually owed by the debtor…" *See Bernstein v. Howe*, 2003 WL 1702254, at *4 (S.D. Ind. Mar. 31, 2003) (finding an FDCPA violation where a debt collector failed to identify the amount of interest owed on an alleged debt).

81.     Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

82.     The FDCPA applies to conduct in state-court litigation, including to representations contained in state-court pleadings. *Marquez v. Weinstein, Pinson, & Riley, P.S.,* 836 F.3d 808, 812 (7th Cir. 2016).

83.     Midland bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Kohn and MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. 2016).

84.     MCM bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Kohn. *Id*.

## CLASS ALLEGATIONS

85.     Plaintiff re-alleges the paragraphs above as if set forth fully herein.

86.     Plaintiff, Krystina Russell, brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Kohn attempted to collect a debt on behalf of Midland, that Midland and/or MCM asserts to have originated with Credit One Bank, N.A. (3) by filing and serving a complaint and summons filed in an Illinois State court on behalf of Midland (4) which includes an Illinois Supreme Court Rule 280.2

affidavit (5) where the box labeled "[P]laintiff is seeking additional amounts after the charge-off date" is checked "[No]" (6) but where Midland nonetheless requests court costs in the complaint and/or summons (7) during the period of time that begins one year prior to the filing of this Complaint, and ends on the date of filing of this Complaint.

87.     The Affidavit contained within the State Court Complaint is a form affidavit that Defendants have caused to be included in at least 35 lawsuits filed on behalf of Midland against consumers in Illinois, within the last year.

88.     The form affidavit filed by Midland, MCM and/or Kohn in collection cases, pursuant to Illinois Supreme Court Rule 280.2, applies only to consumer debts.

89.     As the "Credit Card or Debt Buyer Collection Action Affidavit" contained within the State Complaint is a form affidavit, the Class likely consists of more than 35 persons from whom Defendants attempted to collect a debt.

90.     Plaintiff 's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

91.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests.

92.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendants' conduct was perpetrated on all members of the Class and will be established by common proof.

93.     Plaintiff has retained counsel experienced in class action litigation, including class actions brought under the FDCPA.

## FAIR DEBT COLLECTION PRACTICES ACT—CLASS COUNT

94.     Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

95.     Defendants misrepresented the amount and legal status of an alleged debt, in violation of 15 U.S.C. § 1692e and § 1692e(2) when they sued Plaintiff for court costs which Midland had expressly waived.

96.     Defendants misrepresented the amount and legal status of an alleged debt, in violation of 15 U.S.C. § 1692e and § 1692e(2) when they communicated both that court costs were, and that they were not, owed and/or being sought.

97.     Defendants misrepresented the compensation to which they were entitled, in violation of 15 U.S.C. § 1692e and § 1692e(2), when they communicated that they were not seeking court costs.

98.     Defendants misrepresented the compensation to which they were entitled, in violation of 15 U.S.C. § 1692e and § 1692e(2), when they communicated that they were not seeking court costs.

99.     Defendants used false, misleading, and deceptive means to attempt to collect a debt, in violation of 15 U.S.C. § 1692e and § 1692e(10), when they sought court costs in a state

court complaint while swearing under oath that no additional amounts after charge-off were being sought.

100.    Defendants improperly threatened to pursue court costs from Plaintiff, in violation of 15 U.S.C. § 1692e(5), when they sought additional amounts after the charge-off date of a debt that it had indicated under oath they would not seek.

101.    Defendants engaged in an unfair practice, in violation of 15 U.S.C. § 1692f when Defendants served a state court complaint on Plaintiff that indicated both that Midland was, and was not, seeking additional amounts after the charge-off date of an alleged debt.

102.    Defendants engaged in an unfair practice, in violation of 15 U.S.C. § 1692f, when they attempted to collect court costs which Midland had expressly waived.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's and the class members' favor and against Defendants as follows:

A.    Find that Defendants violated the FDCPA;

B.    Certify the action as a class action;

C.    Award statutory damages, and actual damages if any, for the Plaintiff and class pursuant to 15 U.S.C. § 1692k(a)(2);

D.    Award costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

E.    Award such other or further relief as the Court deems proper.

<u>**JURY DEMAND**</u>

Plaintiff demands trial by jury.

16

By: s/*Mario Kris Kasalo*

One of Plaintiff's Attorneys


Mario Kris Kasalo

**The Law Office of M. Kris Kasalo, Ltd.**

20 North Clark Street, Suite 3100

Chicago, IL 60602

Tel 312-726-6160

Fax 312-698-5054

mario.kasalo@kasalolaw.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount

as a court awards. All rights relating to attorney's fees have been assigned to counsel.


By: s/ *Mario Kris Kasalo*

Mario Kris Kasalo